# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

| | |
|---|---|
| DEBBI PROPP, | CV 15-21-BLG-CSO |
| Plaintiff, | |
| vs. | **ORDER ADDRESSING CROSS MOTIONS FOR SUMMARY JUDGMENT** |
| MOUNTAIN WEST FARM BUREAU MUTUAL INSURANCE COMPANY, | |
| Defendant. | |

Plaintiff Debbi Propp filed this action in Montana state court on February 19, 2015. *Cmplt. (ECF 1-1) at 3.*[1] She seeks a declaratory judgment that a so-called "step-down" provision in her automobile insurance policy ("the policy") with Defendant Mountain West Farm Bureau Mutual Insurance Company ("Farm Bureau") is unenforceable because it violates Montana public policy as defined by the Montana Supreme Court. *Id. at 5.*

Farm Bureau removed the case, invoking this Court's diversity jurisdiction under 28 U.S.C. § 1332. *Notice of Removal (ECF 1) at 1-2.*

---

[1]"ECF" refers to the document as numbered in the Court's Electronic Case Files. *See The Bluebook, A Uniform System of Citation, § 10.8.3.* References to page numbers are to those assigned by the electronic filing system.

Upon the parties' written consent, the case was assigned to the undersigned for all purposes. *Notice of Assignment (ECF 6)*.

On July 16, 2015, the Court adopted the parties' proposed briefing schedule for cross-motions for summary judgment. *Order (ECF 19)*. Those motions are now fully briefed and pending for decision. *Farm Bureau's Mtn. (ECF 20); Propp's Mtn. (ECF 23)*. Having considered the parties' written submissions, the Court will grant Farm Bureau's motion and deny Propp's motion for the reasons explained below.

## I.  <u>BACKGROUND</u>

The parties agree to the following facts:

Policy Number CQMO 5250 was issued by Farm Bureau, as insurer, to Richard Propp and Debbi Propp, as insureds, for the policy term of 1/19/14 12:01 a.m. to 1/19/15 12:01 a.m.

The policy provided multiple coverages including property coverage, "farm" liability coverage, automobile coverage, and other coverage. Six vehicles were covered under the automobile coverage, and the Propps paid premiums on all six vehicles for the various automobile coverages, including underinsured coverage ("UIM").

During the policy term, Debbi Propp ("Propp") was injured in an

automobile accident in Richland County, Montana, and incurred special damages exceeding $100,000 for health care expenses and additional special damages for an emergency life flight. The accident was caused by the negligence of the driver of another vehicle who was insured by State Farm Insurance Company.

Propp settled her bodily injury claim with State Farm Insurance Company for its policy limits of $100,000. She made a claim against Farm Bureau for the UIM coverage, demanding $50,000 per vehicle for each of the six vehicles insured.

Farm Bureau paid $175,000 in UIM coverage, contending that it is obligated to pay $50,000 only for the first vehicle and step-down coverage of $25,000 for vehicles two through six under the Propps' Farm Bureau policy.

Farm Bureau also paid Propp (or paid on her behalf) $30,000 medical payments coverage representing the "stacked" medical payments coverage limits of her policy ($5,000 times six vehicles). *Stmt. of Stipulated Facts (ECF 8) at ¶¶ 1-9.*

Farm Bureau attached to its opening brief a certified copy of the policy. *See ECF 21-1 at 1-74.* Its "Automobile - Additional Policy

Declarations" page provides:

| COVERAGES N, O, AND P | "BODILY INJURY" | "PROPERTY DAMAGE" |
|---|---|---|
| COVERAGE N LIABILITY LIMITS | $300,000 CSL | INCL. IN "BODILY INJURY" CSL.  NO SEPARATE LIMIT APPLIES. |
| COVERAGE O UNDERINSURED MOTORIST | FIRST VEHICLE $50,000 EACH PERSON $100,000 EACH OCCURRENCE ALL SUBSEQUENT VEHICLES $25,000 EACH PERSON $50,000 EACH OCCURRENCE | DOES NOT APPLY |
| COVERAGE P UNINSURED MOTORIST | FIRST VEHICLE $50,000 EACH PERSON $100,000 EACH OCCURRENCE ALL SUBSEQUENT VEHICLES $25,000 EACH PERSON $50,000 EACH OCCURRENCE | DOES NOT APPLY |

*ECF 21-1 at 9.*  The policy also includes a "Schedule of Vehicles" that

provides the year, make, and type of vehicles covered, as well as the

liability premium charged for each, as follows:

| | |
|---|---|
| 1984 Paro Mtrhm | $183.00 |
| 1969 Chev Subur | $223.60 |
| 1986 Ford F15 | $223.60 |
| 1975 Chev Truck | $149.30 |
| 1999 Ford F 350 | $223.60 |
| 2008 Ford F 1 S | $223.60 |

*ECF 21-1 at 10.*

## II.    THE PARTIES' ARGUMENTS

Farm Bureau argues that: (1) the policy expressly provides for stacking[2] of UIM coverage, *Farm Bureau's Opening Br. (ECF 22) at 9*; (2) it has already paid "stacked" coverages for the six vehicles insured in the automobile section of the policy in the amount of $175,000, *id.*; (3) this amount was calculated using the exact coverages provided as stated on the policy's declaratory page – that is, $50,000 per person UIM on the first vehicle, and $25,000 per person UIM on five subsequent vehicles, *id.*; (4) nothing in the policy states that it must pay the first vehicle's $50,000 per person limit on all six vehicles, *id.*; (5) rather, the Declaration page explicitly states that Coverage O (UIM) pays $50,000 per person on the first vehicle and pays $25,000 per person on all subsequent vehicles, *id.*; (6) its payment of a higher amount for the first vehicle and a lower amount for the five subsequent vehicles corresponds with the policy's "step down" coverage because

_____

[2]"'Stacking' means to add the policy limit of . . . underinsured motorist (UIM) . . . coverage from an insurance policy on one vehicle with the . . . UIM . . . policy limits from the policy on another vehicle. For example, an insured with three vehicles and paying a separate premium for UIM coverage on each vehicle could 'stack,' or add, the three UIM coverages together and feasibly collect the triple amount." *Parish v. Morris*, 278 P.3d 1015, 1020, n.1 (Mont. 2012) (*citing Hardy v. Progressive Specialty Ins. Co.*, 67 P.3d 892 (Mont. 2003)).

Propp paid a higher premium for the first vehicle and a lower premium for the subsequent five vehicles for UIM coverage, *id. at 9-10*; (7) the policy's Declarations also state the liability premium paid for each vehicle and, "[u]sing the 2011 Rating Algorithm filed by [Farm Bureau] with the Montana Insurance Commissioner," actuary Patrick Crowe has testified by affidavit[3] that Farm Bureau charged Propp a UIM coverage premium for the first vehicle that was more than twice what it charged for the five subsequent vehicles so that the higher premium resulted in additional UIM coverage for the first vehicle, *id. at 11-12*; (8) this rate structure complies with Montana law, which precludes stacking unless the policy states that stacking is allowed, which Farm Bureau's policy does, *id. at 13*; and (9) in sum, Farm Bureau "charged an increased premium for the chosen coverage of $50,000 per person on the first vehicle, and charged a lesser premium for the coverage of $25,000 per person on all subsequent vehicles[,] [t]he limitations on coverage are reflected in the plain language of the declarations and the premiums charged[,] [and] [t]he policy allows stacked coverage for which valuable consideration was received by charging premiums based

---

[3]Farm Bureau filed Crowe's affidavit in support of its summary judgment motion. *See Crowe Aff. (ECF 21-4).*

on the coverage actually provided." *Id. at 14.*

Propp, on the other hand, urges the Court to "determine that Farm Bureau's step-down coverage is unenforceable in this case as the alleged premium charge reduction for the UIM coverage is unclear and ambiguous." *Propp's Br. (ECF 24) at 7.* She "requests that the Court determine that the UIM coverage for vehicles two through six is $50,000 per vehicle." *Id.* She argues that the general theme of Montana Supreme Court cases that have addressed stacking is "[i]f an insurer charges separate premiums for multiple vehicles in a policy, the coverages should stack." *Id. at 3.*

Propp agrees with Farm Bureau that this is not an "anti-stacking" case but rather a "step-down in coverage" case, and frames the issue before the Court as follows:

> Should an insurer be allowed to step-down UIM coverage for subsequent vehicles when they are charging a separate premium for multiple vehicles and the policy does not make it clear that a lesser premium is being charged for the step-down coverage?

*Id. at 4.*

Propp argues that: (1) although the policy's Declarations list the liability premiums for the six vehicles, "[a]t no place in the declaration

sheet, schedule of vehicles, nor the remaining terms of the policy does Farm Bureau indicate it is charging a lesser premium for the step-down UIM coverage for vehicles two through six[,]" *id. at 2, 5*; (2) the annual premiums charged in the policy reflected that the first vehicle's premium – $183.00 – was actually less than the amount charged – $223.60 each – for the second, third, fifth, and sixth vehicles, *id. at 5*; (3) "[i]t defies logic that a greater UIM premium was paid on the first vehicle and a lesser UIM premium was paid on the subsequent vehicles" when four of the five subsequent vehicles had a higher overall premium than the first vehicle, *id.*; (4) even though Farm Bureau, through the affidavit of Crowe, now contends that a greater UIM premium was paid on the first vehicle and a lesser premium paid on the subsequent vehicles, "such a premium schedule . . . should be apparent on the policy" because "it is not at all clear that any discount is offered for vehicles two through six in consideration for the lesser coverage[,]" *id. at 5-6*; and (5) because "there is no reflection in the policy that the premium charged for UIM coverage on vehicles two through six was reduced because of the step-down in coverage[,]" Farm Bureau's "practice is deceptive and, consequently, is a violation of public policy in

the State of Montana." *Id. at 6.*

In reply, Farm Bureau argues that: (1) any insurer that charges separate premiums for separate vehicles may stack UIM coverages based on premiums paid provided that stacking is actuarially sound with rates filed with Montana's Insurance Commissioner, *Farm Bureau's Reply Br. (ECF 26) at 2-5*; (2) Farm Bureau's policy with Propp allows stacking, limits the stacked coverages on an actuarial basis, and has premium rates that Farm Bureau has filed with Montana's insurance commissioner, *id.*; (3) Farm Bureau has complied with the notice requirements under MCA § 33-23-203, contrary to Propp's contention that amounts charged for incremental amounts of each vehicle's premium "should be apparent on the policy[,]" an "assertion [that] conflicts with the clear language of the controlling statute[,]" *id. at 5-7*; (4) the statute requires that an insurer that charges a premium for a specified coverage clearly inform the insured of the limits of coverage, but it does not require that the insurer state all rate information on the declarations page, *id.*; (5) Farm Bureau complied with this requirement by informing Propp on the declarations page the premium charged on each vehicle, the limits of the four

different automobile coverages, when stacking is allowed, and the limit of each stacked coverage, *id. at 7*; (6) the step-down stacking does not violate Montana public policy because: (a) Propp was charged and paid nearly twice the amount for UIM coverage for the first vehicle than was charged for the five subsequent vehicles; (b) UIM coverage for each vehicle was in proportion to the premium charged and paid; (c) rates supporting the premiums were filed with Montana's Insurance Commissioner; (d) "[t]he Montana Supreme Court has repeatedly upheld valid restrictions on UIM coverage – which is optional – as not violating public policy regarding protection of innocent victims of auto accidents[,]"; and (e) the step-down coverage is not illusory but actually provides coverage the insured paid for, *id. at 7-10*; and (7) parties to an insurance contract are free to contract for coverage provided their agreement does not interfere with mandatory minimum insurance, which is not at issue in this case, *id. at 10-11*.

## III. <u>APPLICABLE LAW</u>

### A. <u>Summary Judgment Standard</u>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Material facts are those which may affect the outcome of the case.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute as

to a material fact is genuine if there is sufficient evidence for a

reasonable fact-finder to return a verdict for the nonmoving party. *Id.*

The moving party bears the initial responsibility of informing the

court of the basis for its motion, and identifying those portions of the

pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any, which it believes demonstrate

the absence of a genuine issue of material fact. *Celotex Corp. v.

Catrett*, 477 U.S. 317, 323 (1986). Where the opposing party will have

the burden of proof at trial, the moving party need only point to an

absence of evidence to support the nonmoving party's case. *Id.*

When parties file cross-motions for summary judgment, as here,

the Court must consider each motion on its own merits. *Fair Housing

Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136

(9th Cir. 2001). The fact that both parties have moved for summary

judgment does not vitiate the Court's responsibility to determine

whether disputed issues of material fact are present. *Id.*

**B.     Application of Montana Law**

As noted, the Court's jurisdiction over this action is based on diversity of citizenship.  Thus, the Court must apply the substantive law of the forum state – Montana.  *Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9ᵗʰ Cir. 2002).

In actions based on diversity jurisdiction, the federal court "is to approximate state law as closely as possible in order to make sure that the vindication of the state right is without discrimination because of the federal forum."  *Gee v. Tenneco, Inc.*, 615 F.2d 857, 861 (9ᵗʰ Cir. 1980).  Federal courts "are bound by the pronouncements of the state's highest court on applicable state law." *Appling v. State Farm Mutual Auto. Ins. Co.*, 340 F.3d 769, 778 (9ᵗʰ Cir. 2003) (citation omitted).

But when an issue of state law arises and "the state's highest court has not adjudicated the issue, a federal court must make a reasonable determination of the result the highest state court would reach if it were deciding the case."  *Medical Laboratory Mgmt. Consultants*, 306 F.3d at 812 (citations omitted).  In doing so, the federal court must "look to existing state law without predicting

potential changes in that law." *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 939 (9th Cir. 2001) (citation omitted).

## IV.   DISCUSSION

The parties' motions raise two principal issues: (1) whether the policy's step-down UIM coverage provision is unclear and ambiguous; and (2) whether the step-down UIM coverage violates Montana public policy.  For the reasons set forth below, the Court concludes that the subject policy provision is clear and unambiguous, and does not violate Montana public policy.

### A.   The Step-Down UIM Coverage Provision is Not Ambiguous

In Montana, the interpretation of an insurance contract is a question of law.  *Scentry Biologicals, Inc. v. Mid-continent Cas. Co.*, 319 P.3d 1260, 1264 (Mont. 2014) (citation omitted).  A court interpreting an insurance policy is to read the policy as a whole and, to the extent possible, reconcile the policy's various parts to give each meaning and effect.  *O'Connell v. Liberty Mut. Fire Ins. Co.*, 43 F.Supp.3d 1093, 1096 (D. Mont. 2014) (*citing Newbury v. State Farm Fire & Cas. Ins. Co. of Bloomington, Ill.*, 184 P.3d 1021, 1025 (Mont. 2008)).  Courts also must give terms and words in an insurance contract their usual meaning and

construe them using common sense.  *Id.* (*citing Newbury*, 184 P.3d at

1025).  "In doing so, the Court 'may not rewrite the contract at issue,

but must enforce it as written if its language is clear and explicit.'"  *Id.*

(*quoting Allstate Ins. Co. v. Wagner–Ellsworth*, 188 P.3d 1042, 1046

(Mont. 2008)).

In those instances in which the parties dispute a term's meaning,

a court must attempt to "determine whether [a] term is ambiguous by

viewing the policy from the viewpoint of a consumer with average

intelligence but not trained in the law or insurance business."  *Montana*

*Petroleum Tank Release Compensation Board v. Crumleys, Inc.*, 174

P.3d 948, 957 (Mont. 2008) (citation and internal quotations omitted).

An "[a]mbiguity does not exist just because a claimant says so or just

because the parties disagree as to the meaning of the contract

provision."  *Giacomelli v. Scottsdale Ins. Co.*, 221 P.3d 666, 672 (Mont.

2009) (citations and internal quotations omitted).  Courts are not to

"distort contractual language to create an ambiguity where none

exists."  *Id.* (citations omitted).

Here, the policy language respecting the step-down UIM coverage

is not ambiguous.  As noted, the policy's Declarations page explicitly

informs the insured that UIM coverage for bodily injury for each person is $50,000 for the first vehicle, and $25,000 for bodily injury for each person for "ALL SUBSEQUENT VEHICLES." *ECF 21-1 at 9.* This clear language informs an average insurance consumer of two things.

First, the language informs an insurance consumer that the policy permits and provides for stacking of UIM coverage. That the language expressly provides for an amount of coverage for the first vehicle and also expressly provides for an amount of coverage for "ALL SUBSEQUENT VEHICLES" necessarily implies that the amounts of coverage will stack. To read the language otherwise would be to improperly rewrite the contract or to ignore its clear and explicit language. *O'Connell*, 43 F.Supp.3d at 1096 (*citing Wagner– Ellsworth*, 188 P.3d at 1046).

Second, the language informs an insurance consumer of the precise amounts of UIM coverage. As noted, the policy provides UIM coverage of $50,000 for the first vehicle, and $25,000 for every subsequent vehicle covered under the policy. An average insurance consumer would understand this straightforward language to mean what it says. There is no other language in the policy that states, or from which it could reasonably be inferred, that the $50,000 limit on

the first vehicle applies to all other vehicles insured under the policy, as Propp argues. To read the language to achieve that conclusion would be to improperly inject ambiguity into the policy where such ambiguity does not exist. *Giacomelli*, 221 P.3d at 672.

For the foregoing reasons, the Court concludes that the policy language respecting step-down UIM coverage is clear and unambiguous.

**B.    The UIM Step-Down Provision Does Not Violate Montana's Public Policy**

The Montana Supreme Court has declared that "[t]he only exception to enforcing an unambiguous contract term is if that term violates public policy or is against good morals." *State Farm Mut. Auto. Ins. Co. v. Gibson*, 163 P.3d 387, 389 (Mont. 2007) (citation omitted). And, the supreme court has "concluded that a provision that defeats coverage for which valuable consideration has been received violates Montana public policy." *Id.* (*citing Hardy v. Progressive Specialty Ins. Co.*, 67 P.3d 892, ¶ 40 (Mont. 2003) *and Bennett v. State Farm Mut. Auto. Ins. Co.*, 862 P.2d 1146, 1148 (Mont. 1993)). Thus, Montana courts have concluded that anti-stacking provisions in automobile insurance policies are void when such provisions permit an insurer to

charge separate premiums for separate vehicles but provide coverage for only one vehicle. *See Mitchell v. State Farm Ins. Co.*, 68 P.3d 703, 711-12 (Mont. 2003).

The situation in the case now before the Court, however, does not fit squarely into the scenarios confronted by the Montana Supreme Court in the cases cited above. The parties concede this difference agreeing that "this is not an 'anti-stacking' case but rather a 'step-down in coverage' case." *ECF 24 at 4; ECF 22 at 8.* Here, as already determined, the policy expressly permits stacking of coverages and unambiguously provides step-down UIM coverage of $50,000 for the first vehicle, and $25,000 for every subsequent vehicle covered under the policy, amounts Farm Bureau already has paid to Propp. *ECF 8 at ¶ 8.* So the question here is whether it violates Montana public policy for Farm Bureau to charge separate premiums for separate vehicles for UIM coverage and then pay UIM coverages based on the premium paid for each vehicle. For the reasons that follow, the Court concludes that doing so does not violate Montana public policy.

First, Farm Bureau's policy complies with MCA § 33-23-203, which reflects Montana's public policy respecting stacking of coverages.

Even though, as the parties agree, this is not a stacking case, the statute is instructive respecting the question at hand. This so-called "anti-stacking" statute permits insurers to limit stacking of insurance coverage limits – regardless of the number of vehicles covered – if the premium rates: (1) have been filed with Montana's Insurance Commissioner; and (2) "actuarially reflect the limiting of coverage separately to the vehicles covered by the policy[.]" MCA § 33-23-203(1)(c).[4]

---

[4]The statute provides, in relevant part, as follows:

(1) Unless a motor vehicle liability policy specifically provides otherwise, the limits of insurance coverage available under each part of the policy must be determined as follows, regardless of the number of motor vehicles insured under the policy, the number of policies issued by the same company covering the insured, or the number of separate premiums paid:

* * *

(c) the limits of the coverages specified under one policy or under more than one policy issued by the same company may not be added together to determine the limits of insurance coverages available under the policy or policies for any one accident if the premiums charged for the coverage by the insurer actuarially reflect the limiting of coverage separately to the vehicles covered by the policy and the premium rates have been filed with the commissioner.

Farm Bureau has filed the affidavit of actuary Patrick Crowe in support of its summary judgment motion. First, Crowe states in his affidavit – which Propp has failed to rebut with evidence of her own – that Farm Bureau filed its rates with the Montana Insurance Commissioner. *ECF 21-4 at 5; see also Farm Bureau's Stmt. of Undisputed Facts (ECF 21) at ¶ 3 (citing ECF 21-3, Farm Bureau's Montana Auto Rate Level Indications).*

Second, Crowe states in his affidavit that: (1) the liability premiums listed in the policy "reflect different rates charged for Coverage[ ] O [UIM] . . . for the first vehicle than for the subsequent five vehicles, and those premium differences flow back to the liability limit factors used in the premium calculation for each vehicle[,]" *ECF 21-4 at ¶ 15*; (2) Propp, as the consumer, "paid a higher rate for the UIM . . . coverage calculated for the first vehicle than for vehicles two through six[,]" *id. at ¶ 18*; and (3) "[i]n return, [Propp] receives differing coverage for the six vehicles [such that] UIM on the first vehicle has limits of $50,000 per person, . . . while the UIM on the subsequent five

---

MCA § 33–23–203(1)(c).

vehicles has limits of $25,000 per person . . . as stated on page 9 of the policy[,]" *id. at ¶ 19*. Thus, the premium rates "actuarially reflect the limiting of coverage separately to the vehicles covered by the policy" as required under MCA § 33-23-203(1)(c). Consequently, the policy's UIM step-down coverage provision does not violate Montana public policy.

In reaching this conclusion, the Court is not persuaded by Propp's argument that it violates Montana public policy if the insurance policy contains no breakdown or listing of the precise amounts of premiums charged for each type of coverage for each vehicle covered under the policy, thus depriving the insured of clear and adequate notice of the premiums. First, as is evident from its language, MCA § 33-23-203(1)(c) does not require such a breakdown. Rather, the statute permits insurers to limit stacking of insurance coverage limits – regardless of the number of vehicles covered – if the premium rates: (1) have been filed with Montana's Insurance Commissioner; and (2) "actuarially reflect the limiting of coverage separately to the vehicles covered by the policy[.]" MCA § 33-23-203(1)(c). As the Court already has concluded, Farm Bureau has satisfied the statute's requirements.

Second, Propp cites no authority – in Montana or elsewhere – that

requires an insurer to include a premium breakdown in the insurance policy. The cases Propp cites hold instead that Montana public policy does not allow an insurer to receive consideration for coverage that is not provided. *See Gibson*, 163 P.3d at 391. As discussed, the unchallenged evidence before the Court indicates that has not happened in this case. Rather, Farm Bureau charged premiums for coverage that it paid. Thus, Farm Bureau's policy does not violate public policy.

## V.    CONCLUSION

Based on the foregoing, IT IS ORDERED that Farm Bureau's summary judgment motion *(ECF 20)* is GRANTED and Propp's summary judgment motion *(ECF 23)* is DENIED.

The Clerk of Court shall enter Judgment accordingly and close this case.

DATED this 14th day of October, 2015.

/s/ Carolyn S. Ostby
United States Magistrate Judge